### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIDWEST BANK, | : | Civil No. 1:18-CV-01960 |
| Plaintiff, | : | |
| v. | : | |
| DAVID H. GOLDSMITH, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court in this breach of contract action are Plaintiff's motion for summary judgment and Plaintiff's motion to strike certain evidence from the summary judgment record. (Docs. 86, 98.) For the reasons that follow, the motion for summary judgment is denied and the motion to strike is denied as moot.

### BACKGROUND AND PROCEDURAL HISTORY[1]

Defendant Fayette Thermal, LLC ("Fayette Thermal") is a Pennsylvania corporation that provides steam power to the Pennsylvania Department of Corrections ("DOC") under an agreement between Fayette Thermal and the DOC that was originally signed in 2000. (Doc. 117 ¶ 10.)

---

[1] This section provides relevant procedural history and, where applicable, facts that are necessary to understand the procedural posture of this case. Because this section is only intended to provide background information to aid the reader's understanding of the case, the court occasionally cites to assertions that are in dispute. Accordingly, this section shall not be construed as making any factual determination applicable to the pending motion for summary judgment or motion to strike. The question of whether there are any genuine issues of material fact shall be considered below.

Although not directly at issue in this case, the agreement between Fayette Thermal and the DOC provides the backdrop for the present litigation, which arises from several other contracts involving Fayette Thermal and Defendant David H. Goldsmith ("Goldsmith"), Fayette Thermal's president.  The first two of these contracts were signed on September 23, 2016, when M&T Bank agreed to make two separate loans to Fayette Thermal—one for $3,875,000, the other for $335,000.  (*See* Docs. 124-1 to 124-6.)  The remainder of the contracts were signed on February 28, 2018, and arose from a $5,000,000 loan that Midwest Bank made to OrangeHook, Inc. ("OrangeHook").  (*See* Doc. 79 ¶ 8; Doc. 80 ¶ 8.)  To help secure OrangeHook's ability to pay the $5,000,000 owed to Midwest Bank, Goldsmith executed and delivered to Midwest Bank a commercial guaranty in which he agreed to guarantee OrangeHook's payment.  (*See* Doc. 79 ¶ 10; Doc. 80 ¶ 10.)  Fayette Thermal also guaranteed OrangeHook's payment by pledging its financial rights under its agreement with the DOC to Midwest Bank in the event of OrangeHook's default.  (Doc. 79 ¶ 11; Doc. 80 ¶ 11.)  In addition to the guarantees from Goldsmith and Fayette Thermal, the OrangeHook loan was also backed by a mortgage on a property owned by a third party in Westmoreland County,

Pennsylvania. (*See* Transcript of Oral Argument on Motion to Appoint Receiver at 10:7–24.)[2]

On September 1, 2018, OrangeHook defaulted on its payment obligation to Midwest Bank. (Doc. 79 ¶ 13; Doc. 80 ¶ 13.) After both Defendants allegedly failed to satisfy their obligation to secure OrangeHook's payment under the loan, Midwest Bank filed suit on October 10, 2018, naming as Defendants OrangeHook, Fayette Thermal, and Goldsmith. (Doc. 1.) Following the filing of this complaint, Midwest Bank allegedly sold a portion of its interest in the OrangeHook loan to an individual named Whitney Peyton ("Peyton") for $2,358,048. (Doc. 79 ¶ 14.)[3]

On December 5, 2018, Midwest Bank filed a motion to appoint a receiver to manage the affairs of Fayette Thermal and secure Fayette Thermal's ability to make payments to Midwest Bank. (Doc. 9.) Midwest Bank then filed a motion to voluntarily dismiss OrangeHook from the case on December 10, 2018. (Doc. 10). United States District Judge John E. Jones, III granted the motion the following day. (Doc. 11.)

On August 22, 2019, Peyton executed a limited power of attorney appointing Midwest Bank as his attorney-in-fact to collect the sums allegedly due to him

---

[2] At the court's request, the assigned court reporter provided an unofficial transcript of the oral argument pertaining to Midwest Bank's motion to appoint a receiver. All citations to the transcript are to the unofficial version.
[3] Defendants deny that Peyton purchased a portion of the loan and contend that Peyton's payment to Midwest Bank was actually made on OrangeHook's behalf. (*See* Doc. 80 ¶¶ 14–15.)

under the OrangeHook agreement. (Doc. 79 ¶ 15; Doc. 80 ¶ 15.) Midwest Bank then filed a motion for summary judgment against Goldsmith on August 26, 2019. (Doc. 53.) M&T Bank filed a motion to intervene in the case on September 27, 2019. (Doc. 63.) Judge Jones granted the motion on September 30, 2019. (Doc. 68.) On October 31, 2019, Midwest Bank filed a motion to amend its complaint, seeking to add Peyton as a named plaintiff in the case. (Doc. 76.)

Judge Jones denied Midwest Bank's motion for summary judgment on November 1, 2019. (Doc. 77.) Judge Jones concluded that summary judgment was inappropriate because there were genuine issues of material fact as to (1) whether the initial payment made by Peyton to Midwest Bank was intended to purchase a portion of the OrangeHook loan or was instead intended to pay part of the loan on OrangeHook's behalf; (2) the amount of money that Midwest Bank was seeking; and (3) whether Goldsmith could be held liable for late fees. (*Id.* at 6–9.) Given these factual issues, the court declined to decide whether Midwest Bank was entitled to judgment as a matter of law and denied the motion. (*Id.* at 9–10.) In denying the motion, Judge Jones gave Midwest Bank leave to file a renewed motion for summary judgment after the close of fact discovery. (*Id.* at 9.)

Following the denial of Midwest Bank's motion for summary judgment, Judge Jones granted Midwest Bank's motion to amend its complaint on November 18, 2019, and Midwest Bank filed its amended complaint on the same date. (Docs.

78–79.) Later that day, the case was reassigned from Judge Jones to the undersigned pursuant to a verbal order from then-Chief United States District Judge Christopher C. Conner. On December 2, 2019, Defendants answered Midwest Bank's amended complaint and raised affirmative defenses to Midwest Bank's claims, including fraudulent inducement. (Doc. 80.) Fact discovery then concluded on January 31, 2020. (*See* Doc. 84.)

In February 2020, Midwest Bank acquired M&T Bank's ownership interest in the loans M&T Bank had given to Fayette Thermal in September 2016. (*See* Doc. 124 ¶ 30.) On February 3, 2020, Midwest Bank filed a renewed motion for summary judgment, seeking summary judgment against both Fayette Thermal and Goldsmith regarding the Defendants' alleged guarantees of the OrangeHook loan. (Doc. 86.) Midwest Bank filed a statement of material facts in support of its motion on February 3, 2020, and filed a brief in support of the motion on February 18, 2020. (Docs. 87–88.)

On March 4, 2020, Midwest Bank and M&T Bank filed a joint motion to dismiss M&T Bank from the case based on Midwest Bank having acquired its interest in the relevant loans. (Doc. 90.) The court granted that motion and dismissed M&T Bank on March 10, 2020. (Doc. 92.)

Defendants opposed Midwest Bank's motion for summary judgment on March 10, 2020, filing both a brief in opposition to the motion and a statement of

facts in response to Midwest Bank's statement.  (Docs. 94, 96.)  Midwest Bank filed a reply brief on March 24, 2020.  (Doc. 97.)  Midwest Bank additionally filed a motion to strike certain documents from the summary judgment record.  (Doc. 98.)  Specifically, Midwest Bank sought to strike any references to an investigation from the Securities and Exchange Commission ("SEC") that Defendants had mentioned in their brief opposing the motion for summary judgment.  (*Id.*)  Midwest Bank filed a brief in support of its motion to strike on April 6, 2020.  (Doc. 101.)  Since that time, Defendants have filed a brief opposing the motion, and Midwest Bank has filed a reply brief.  (Docs. 112, 127.)

     Midwest Bank filed a renewed motion to appoint a receiver on April 17, 2020.  (Doc. 106.)  Midwest Bank filed an unopposed motion for leave to file a supplemental complaint on April 28, 2020, seeking to add allegations based on the loans it acquired from M&T Bank.  (Doc. 118.)   The court granted that motion on April 30, 2020, and Midwest Bank's supplemental complaint was filed the same day.  (Docs. 123–24.)  On May 26, 2020, following oral argument, the court denied Midwest Bank's renewed motion to appoint a receiver.  (Doc. 131.)  The court then denied Defendants' motion for leave to file a sur reply in opposition to the motion for summary judgment on May 29, 2020.  (Doc. 133.)  With briefing on the motion for summary judgment and the motion to strike having concluded, both motions are ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district court to exercise subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence"

or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

## DISCUSSION

Midwest Bank argues that it is entitled to summary judgment both on its own behalf and as the attorney-in-fact for Peyton because OrangeHook defaulted on its payment obligations and Goldsmith and Fayette Thermal breached their respective obligations to guarantee OrangeHook's payment. (Doc. 88.)

Defendants argue that summary judgment is inappropriate because (1) there are genuine issues of material fact as to whether Midwest Bank fraudulently induced the Defendants to guarantee OrangeHook's payment; (2) there are genuine issues of material fact as to what balance is owed on the OrangeHook contract and whether the Peyton payment satisfied part of the contract; and (3) there are genuine issues of material fact as to whether Midwest Bank is permitted to recover late fees. (Doc. 96.)

Midwest Bank argues in reply that the plain terms of the parties' contract and the parol evidence rule bar the court from considering evidence regarding Defendants' fraudulent inducement argument. (Doc. 97 at 6–11.) Even assuming the court may consider such evidence, Midwest Bank additionally argues that Defendants' fraudulent inducement argument fails because there is no evidence that Midwest Bank made misrepresentations to Defendants, because there is no evidence that Defendants relied on those alleged misrepresentations, and because Midwest Bank was not obligated to disclose information about OrangeHook to the Defendants during the contract negotiations. (*Id.* at 11–20.) Moving beyond the fraudulent inducement argument, Midwest Bank argues that there are no genuine issues of material fact as to the amount of money that Defendants owe Midwest Bank and that Defendants are liable for late fees to Midwest Bank. (*Id.* at 20–24.)

## A. The Court May Consider Parol Evidence Pertaining to Defendants' Fraudulent Inducement Defense

The court will first address Midwest Bank's arguments that the court may not consider evidence pertaining to Defendants' fraudulent inducement argument. (*See* Doc. 97 at 6–11.)  Midwest Bank first argues that two clauses in the parties' contracts, the Representations and Warranties Clause and the Integration Clause, bar this court from considering evidence extrinsic to the contract.  (*Id.* at 6–7.)  The Representations and Warranties Clause states as follows:

> Guarantor represents and warrants to [Midwest] that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not the request of Lender; …(J) Guarantor has established adequate means of obtaining from [OrangeHook] on a continuing basis information regarding [OrangeHook's] financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor agrees that absent a request for information, [Midwest] shall have no obligation to disclose to Guarantor any information or documents acquired by [Midwest] in the course of its relationship with [OrangeHook].

(Doc. 97 at 6–7.)  The Integration Clause provides as follows:

> Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.

(*Id.* at 7.) Defendants additionally argue that the parol evidence rule bars the court from considering extrinsic evidence. (*Id.* at 10–11.)

Defendants' arguments are incorrect. Under Minnesota law,[4] "[t]he fraud exception to the parol evidence rule authorizes admission of evidence regarding fraudulent oral representations by one party which induce another to enter into a written contract." *ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 294 (D. Minn. 2011) (quoting *Little v. Colorbrite, Inc.*, No. C2-90-1135, 1990 WL 163102, at *1 (Minn. Ct. App. Oct. 30, 1990)). "The parol evidence rule is inapplicable to exclude evidence of fraudulent oral representations by one party which induce another to enter into a written contract." *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 193 (Minn. Ct. App. 1985) (citing *Hanson v. Stoerzinger*, 299 N.W.2d 401, 404 n.4 Minn. 1980)).

Similarly, integration clauses contained in a contract "do not prevent proof of fraudulent representations by a party to the contract." *Swenson*, 276 F.R.D. at 294 (quoting *Johnson Bldg. Co.*, 374 N.W.2d at 193). Thus, although the Representations and Warranties Clause and the Integration Clause might preclude some evidence that is extrinsic to the language of the contracts, they may not

---

[4] The parties agree that Minnesota law governs the contracts that were signed between Midwest Bank and the Defendants, and Judge Jones has previously ruled that Minnesota law governs those contracts. (*See* Doc. 77 at 7 n.3.) Although it appears from the record that Pennsylvania law might govern the contacts that were originally signed between the Defendants and M&T Bank, those contracts are not at issue in the instant motion for summary judgment or motion to strike. Accordingly, the court will apply Minnesota law to the present motions.

11

preclude extrinsic evidence bearing on Defendants' fraudulent inducement defense. *Id.*; *see also Ascente Business Consulting, LLC v. DR MyCommerce*, No. 0:18-CV-00138, 2019 WL 1513896, at *6 (D. Minn. Apr. 8, 2019) (finding that integration clause did not bar consideration of extrinsic evidence bearing on fraudulent inducement defense). Accordingly, because neither the parol evidence rule nor the language of the parties' contracts bars evidence pertaining to Defendants' fraudulent inducement defense, the court concludes that it may consider such evidence.

### B. There Are Genuine Issues of Material Fact Regarding Defendants' Fraudulent Inducement Defense that Preclude Summary Judgment

Fraudulent inducement is an affirmative defense that may be raised to block enforcement of a contract. *Grace Capital, LLC v. Mills*, No. A09-1857, 2010 WL 3396817, at *3 (Minn. Ct. App. Aug. 31, 2010). To establish fraudulent inducement, a party must show:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Id.* (quoting *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)). Whether a party has established the defense of fraudulent inducement is ordinarily a question of fact that cannot be determined at the

summary judgment stage.  *Stubblefield v. Gruenberg*, 426 N.W.2d 912, 914 (Minn. Ct. App. 1988).

A party's silence may constitute a false representation where the party has a duty to speak or disclose a fact.  *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989) (citing *Richfield Bank & Tr. v. Sjogren*, 244 N.W.2d 648, 650 (1976)).  "A duty to disclose facts may exist under certain circumstances, such as when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading."  *Id.* (citing *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (1972)).  A party may also have a duty to disclose facts where it has "special knowledge of material facts to which the other party does not have access."  *Id.* (citing *Klein*, 196 N.W.2d at 622).

Here, the court concludes that there are genuine issues of material fact regarding Defendants' fraudulent inducement defense that preclude the entry of summary judgment.  Defendants have produced deposition testimony from Midwest Bank's Commercial Loan Officer Vice President, Nate Hunter ("Hunter"), that could support an inference that the bank made false representations to induce Defendants to enter into the contracts at issue.  (*See* Doc. 95-1 at 75–78.)  Specifically, a finder of fact could infer from Hunter's testimony that Midwest Bank was aware that OrangeHook was likely to default on its loan

and concealed this awareness from the Defendants.  (*See id.*)  Such subjective awareness of OrangeHook's likelihood of default could constitute "special knowledge of material facts" that OrangeHook needed to disclose to Defendants, and their failure to disclose could therefore constitute fraudulent inducement.  *See L & H Airco, Inc.*, 446 N.W.2d at 380.

Midwest Bank raises a number of arguments to support its contention that there are no genuine issues of material fact pertaining to Defendants' fraudulent inducement defense, none of which change the court's conclusion that there are genuine issues of material fact that preclude summary judgment.  Midwest Bank first argues that any misleading statements made to Defendants were not made by Midwest Bank.  (Doc. 97 at 12–13.)  This argument fails because it does not address the alleged misrepresentations through silence that a finder of fact could infer from the Hunter deposition.

Midwest Bank next argues that deposition testimony establishes that Defendants did not rely on any alleged misrepresentations. (*Id.* at 13–14.)  This argument fails because it calls for the court to weigh the evidence, which the court may not do at this stage.  *Anderson*, 477 U.S. at 249.  The court's review of facts at the summary judgment stage is limited to determining whether there are genuine issues of material fact that necessitate a trial, and the evidence produced by Defendants shows that there is such a genuine issue of material fact.  Similarly,

14

Midwest Bank's argument that it does not possess any specialized knowledge that would trigger a duty to disclose information to Defendants fails because it requires the court to weigh evidence.  As noted above, Hunter's deposition testimony could support an inference that Midwest Bank was aware of OrangeHook's likelihood of default and did not disclose that information to Defendants.

Finally, Midwest Bank argues that the context of Hunter's deposition testimony shows that his "comments about OrangeHook's financial condition related to the need for collateral and had nothing to do with OrangeHook being insolvent."  (Doc. 97 at 17.)  Although this may be a reasonable inference from the evidence, any reasonable inferences must be made in Defendants' favor because they are the parties opposing summary judgment.  *See Jutrowski*, 904 F.3d at 288.

Accordingly, because there are genuine issues of material fact pertaining to Defendants' fraudulent inducement argument, the court will deny Midwest Bank's motion for summary judgment.  A finding in Defendants' favor on the fraudulent inducement defense would completely bar Midwest Bank from recovering on its breach of contract claims.  Genuine issues of material fact on the fraudulent inducement defense therefore compel this court to deny summary judgment and allow this case to proceed to trial.  Having reached such a conclusion, the court will not address whether there are other genuine issues of material fact because the

genuine issues of material fact pertaining to the fraudulent inducement defense are sufficient by themselves to preclude summary judgment.

### C. Midwest Bank's Motion to Strike Is Moot

Midwest Bank's motion to strike seeks to strike any reference to a currently pending SEC investigation into OrangeHook from the summary judgment record. (*See* Doc. 98.) Because the court concluded above that genuine issues of material fact that have nothing to do with the SEC investigation preclude the entry of summary judgment, there is no cause for the court to determine whether references to the investigation should be stricken from the summary judgment record. Accordingly, Midwest Bank's motion to strike is denied as moot. This denial is without prejudice to the right of Midwest Bank to contest the admissibility of that evidence through the filing of a motion in limine at a later date.

## CONCLUSION

For the foregoing reasons, Midwest Bank's motion for summary judgment is denied and its motion to strike is denied as moot. An appropriate order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Court Judge  
Middle District of Pennsylvania

Dated: June 19, 2020