**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIDWEST BANK, | : | Civil No. 1:18-CV-01960 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID H. GOLDSMITH, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion for attorneys' fees filed by Midwest Bank ("Midwest"). (Doc. 201.) For the reasons that follow, the court will grant Midwest's motion for attorneys' fees.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Following a bench trial, the court found in favor of Midwest, concluding that David H. Goldsmith and Fayette Thermal, LLC ("Defendants") were in breach of contract. (Doc. 198.) Accordingly, the court awarded $5,498,924.31 to Midwest for principal, interest, and late charges subject to increase based on accrual of per diem interest to be calculated at the time judgment is entered. (Doc. 198.) Based on the stipulation of counsel, the court allowed the parties to argue the issue of attorneys' fees separately following the entry of the order. (*Id.*) The court granted Midwest leave to file a motion for attorneys' fees within 29 days of the court's order. (*Id.*) The court noted that it would enter judgment upon resolution of the

motion for attorneys' fees and would include principal, late charges, accrued interest, and attorneys' fees owed as of the date of the judgment. (*Id.*) On March 28, 2022, Midwest filed its motion for attorneys' fees followed by its brief in support on April 11, 2022. (Docs. 201, 202.) Defendants filed a brief in opposition on April 25, 2022. (Docs. 203.) Midwest filed an unopposed motion for extension of time to file a reply brief, which was granted, and filed its reply brief on May 13, 2022. (Docs. 205, 206, 207.)

In response to Defendants' request for Midwest to produce unredacted billing records, on July 27, 2022, the court ordered Midwest to produce such records within 14 days, on or before August 10, 2022. (Doc. 208.) The court's order instructed Midwest to include in its court-ordered supplement a non-privileged description of the work performed as well as the amount billed for such work. (*Id.*) The order noted that, to the extent Midwest wished to pursue fees for litigation of the attorneys' fees issue, Midwest should include time spent producing the court-ordered supplement pursuant to Defendants' request. (*Id.*) The court instructed Defendants that they should lodge any objections within 14 days of the supplement's docketing. (*Id.*)

Midwest produced the court-ordered supplement on August 10, 2022. (Doc. 209.) Defendants filed a late response on August 26, 2022, to which Midwest timely replied on August 30, 2022. (Docs. 210, 211.)

## STANDARD OF REVIEW

According to the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This method of calculating attorneys' fees, which has been adopted in Minnesota,[1] is frequently called the "lodestar" method. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 621–22 (Minn. 2008) (citing *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 542 (Minn. 1986)).  Minnesota courts have used this method in instances, such as this, for breach of contract cases where the underlying agreement provides for reasonable attorneys' fees. *See Sharepoint Credit Union v. Blanchard*, No. 27-cv-19-18593, 2021 Minn. Dist. LEXIS 70, at *6–9 (Minn. Dist. Ct. 4th Jud. Dist. Mar. 23, 2021).

When determining "the reasonableness of the hours and the reasonableness of the hourly rates," the court should consider "all relevant circumstances." *Milner*, 748 N.W.2d at 621 (quoting *State v. Paulson*, 188 N.W.2d 424, 426 (Minn. 1971)).  The standards for calculating reasonable attorneys' fees in Minnesota have been summarized in *In re L-Tryptophan Cases*, 518 N.W.2d 616, 621–22 (Minn. Ct. App. 1994).  Twelve possible factors are listed in *L-Tryptophan*, not all of

---

[1] Previously, the parties agreed that Minnesota law applied to the contract between Midwest and Defendants.  (Doc. 134, p. 11 n.4.)  Thus, it is appropriate for the court to apply Minnesota law here.

which apply in every case.  The factors that courts have considered include: (1) time and labor required; (2) responsibility assumed; (3) magnitude of the principal amount; (4) the results obtained; (5) the fees customarily charged for similar services; (6) the experience, character, reputation, and ability of counsel; (7) the fee arrangements; (8) the circumstances under which the services were rendered; (9) the nature and difficulty of the proposition involved; (10) the doubtful solvency of the client and the apparent difficulties in collection; (11) the anticipation of future services; and (12) the preclusion of other employment.  *L-Tryptophan*, 518 N.W.2d at 621 (citing *Kittler & Hedelson v. Sheehan Props., Inc.*, 203 N.W.2d 835, 839 (Minn. 1973)); *see also Paulson*, 188 N.W.2d at 426 (identifying similar factors).  In *L-Tryptophan*, the court noted that the first factor—the amount of time spent on the case—is the most important factor.  518 N.W.2d at 621.

Under Minnesota law, the party seeking an award of attorneys' fees bears the burden of producing time entries and other records sufficient to allow identification of the work related to the claims giving rise to the recovery of the attorneys' fees.  *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 628–30 (Minn. 1988).  Further, "[w]hen the reasonableness of the requested attorney fees is challenged, the district court must provide a concise but clear explanation of its reasons for the fee award."  *State v. Krause*, 925 N.W.2d 30, 35 (Minn. 2019) (quoting *Milner*, 748 N.W.2d at 621).

Assessing a fee's reasonableness "includes consideration of 'the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorney conducted that activity.'" *Wal Mart Stores, Inc. v. Barton*, 223 F.3d 770 (8th Cir. 2000) (quoting *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997)). Hours may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed, or if the hours "are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34; *see also El-Tabech v. Clarke*, 616 F.3d 834, 842 (8th Cir. 2010) ("[A court must exclude] hours that are excessive, redundant, or otherwise unnecessary.") The degree of plaintiffs' success is "the most critical factor" in selecting a reasonable fee award. *Hensley*, 461 U.S. at 436.

## DISCUSSION

Midwest requests $450,702.80 in attorneys' fees, which represents 1,480.75 hours billed. (Docs. 211; 211-1.) The fees span from May 9, 2019, to August 9, 2022, on a case which began in October 2018 and has seen extensive motions practice, settlement conferences, and ultimately a bench trial which resulted in a verdict in Midwest's favor. (Doc. 211-1.) The ruling in Midwest's favor resulted in an award of $5,498,924.31 for principal, interest, and late charges. (Doc. 198.)

Based on Defendants' objections, Midwest has stipulated to reduce the attorneys' fees it seeks by $82,334.08.  (Doc. 210, p. 2.)[2]  Specifically, Midwest has eliminated from its request $2,500 it paid as a Sheriff's Sale fee; $4,024.93 which was advanced to pay real estate taxes regarding Verdant Holdings; $70,470.15 representing a Department of Corrections payment which was used to pay Porter Wright; and $5,339 for the Dickinson Wright entries related to an unrelated matter called the Verdant Holdings bankruptcy.  (Doc. 207, pp. 6, 8; Doc. 209, pp. 2, n.1.)

Three of Defendants' objections remain for the court to decide.  Defendants do not contest the hours expended by Midwest's attorneys and staff nor their hourly rates.  Instead, Defendants contest the reasonableness of some of Midwest's litigation tactics.  The court will address each category of fees and costs in turn.

### A. Midwest's second motion for summary judgment and request for reconsideration were not unreasonable, and Midwest will be awarded attorneys' fees for both.

First, Defendants assert that it was not reasonable for Midwest to seek summary judgement for a second time and then, after being denied, to seek reconsideration.  (Doc. 203, p. 3.)  On that basis, Defendants argue Midwest should not be reimbursed for attorneys' fees related to its second motion for summary judgement and subsequent request for reconsideration.  (*Id.*)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

In November 2019, the court denied Midwest's initial motion for summary judgment without prejudice after finding that Defendant Goldsmith had alleged genuine issues of material fact sufficient to survive the motion. (Doc. 77, p. 8.) At the time, the court explicitly stated that Midwest was "free to revive its Motion at the close of discovery." (*Id.*) As this court explicitly granted Midwest leave to revive its motion for summary judgment at the close of discovery, the court finds no basis to now conclude that Midwest was unreasonable in moving for summary judgment once discovery had closed.

Nor can the court find a basis on which to conclude that Midwest was unreasonable in seeking reconsideration of the court's denial of summary judgment. First, there was nothing inherently unreasonable about seeking reconsideration of the decision. Second, like Midwest, Defendants have also moved for reconsideration during this litigation. (*See* Docs. 171, 172.) For these reasons, the court will deny Defendants' motion to deduct the costs associated with Midwest's second motion for summary judgment and request for reconsideration from its awarded attorneys' fees.

## B. Midwest's second attempt to appoint a receiver was not unreasonable and will be included in Midwest's award of attorneys' fees.

Next, Defendants argue that it was unreasonable for Midwest to move twice for the appointment of a receiver. (Doc. 203, p. 3.) Accordingly, they seek for Midwest to be denied attorneys' fees associated with the second motion to appoint

7

a receiver. (*Id.*) Midwest counters that its initial motion for appointment of a receiver, Doc. 9, was never ruled on. (Doc. 207, p. 4.) Nor is Midwest seeking reimbursement for fees associated with the initial motion. (*Id.*) Further, Midwest contends that it would not have needed to move for appointment of a receiver if Defendants had honored the Assignment of Financial Rights after Midwest acquired the M&T Loans. (*Id.* at 4–5.) Midwest argues that, instead of honoring the Assignment of Financial Rights, Defendants refused Midwest's demand for steam sale payments. (*Id.* at 5.) Midwest asserts that Defendants denied it steam sale payments even though Defendants had allowed M&T, Midwest's predecessor-in-interest, to receive such payments directly from the payor. (*Id.*; Doc. 108-12.) Essentially, Midwest argues that if Defendants had honored Midwest's contractual rights, it would not have had to pursue appointing a receiver.

Although the court denied Midwest's motion for appointment of a receiver, Doc. 131, it does not recognize anything unreasonable about Midwest's pursuit of appointing a receiver or the way it has gone about vindicating its financial rights in general. For these reasons, the court will deny Defendants' motion to deduct Midwest's motion for appointment of a receiver from its awarded attorneys' fees.

**C. Midwest's preparation of supplemental logs was not unreasonable, and neither was its request for attorneys' fees for such work.**

Finally, in their supplemental response in opposition to Midwest's fees request, Defendants lodge an additional argument.[3]  (Doc. 210.)  Defendants note that, because of their initial objections to fees, and the court's July 27, 2022 order for Midwest to produce the court-ordered supplemental records, Midwest has reduced the amount it requests by $82,334.08.  (*Id.* at 2.)  Defendants argue that Midwest's legal work following the court's order was necessary, at least in part, because Midwest's initial filing for attorneys' fees was excessive.  (*Id.*)  Accordingly, Defendants assert that Midwest's award should exclude all time entries dated after the court's July 27, 2022 order.  (*Id.*)  This would reduce the award amount by $6,267.50.  (*Id.*)

Midwest submits that Defendants' argument is untimely and should be disregarded.  (Doc. 211, pp. 1–2.)  In the alternative, Midwest argues that Defendants are incorrect in their assumption that the time entries beginning July 27, 2022 were necessitated by Midwest filing for excessive attorneys' fees.  (*Id.* at 2.)  On the contrary, these recent time entries reflect the time Midwest spent to create the court-ordered supplement which required Midwest to generate a log of

---

[3] Defense counsel's opposition brief was untimely per the court's order.  (*See* Docs. 208, 210.)  This constitutes the second time defense counsel has untimely filed in this matter.  (*See* Docs. 115, 120, 122.)

nonprivileged work over the course of this litigation.  (*Id*.)  Of the $6,267.50

reduction that Defendants request, no more than one hour of those fees relate to

Midwest's additional review of invoices for matters unrelated to this litigation

regarding the Dickinson Wright issues.  (*Id*.)  Further, Midwest points out that this

court's order regarding the supplemental report explicitly instructed Midwest to

"include the time expended in preparing this court-ordered supplement to the

extent that Plaintiff seeks to recover these fees."  (Doc. 211, p. 2; Doc. 208, ¶ 1.)

Defendants have already been excused once for untimely filing their

arguments without leave for an extension.  (*See* Docs. 115, 120, 122.)  On this

second instance, it would be appropriate for the court to discard their final

argument as untimely.  However, in the interest of achieving finality in this case,

the court will consider this argument.  Midwest has complied with the court's order

and logged the fees it incurred in fulfilling Defendants' request for unredacted time

entries.  The court finds no basis to conclude that Midwest was unreasonable in

following its guidance, providing the unredacted logs Defendants requested, and

including the time spent to complete this task in its request for attorneys' fees.

## CONCLUSION

For these reasons, the court will grant Midwest's motion for attorneys' fees. (Doc. 201.)  The court will also direct the Clerk of Court to enter an award of $450,702.80 in attorneys' fees against Defendants.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 26, 2022